

**FILED**
**Mar 06, 2026**
**09:24 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| JD Russell | Docket No.      2024-60-3623 |
| v. | State File No.      14754-2024 |
| Benchmark Contractors, LLC, et al. | |
| Appeal from the Court of Workers' Compensation Claims Joshua D. Baker, Judge | Heard February 12, 2026 in Knoxville, Tennessee |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employer challenges the trial court's award of temporary disability benefits and attorneys' fees. The employee suffered multiple injuries requiring treatment at an emergency room when a tripod fell on him at work. After the employee's discharge, the employer did not offer a panel of physicians, so the employee followed up with his primary care physician, who restricted him from working. The employee then suffered a stroke, necessitating additional emergency medical care. Several weeks later, after the employee retained counsel, the employer offered two separate panels but indicated that it would not authorize any appointments until it had received the employee's recent medical records. The employee returned the signed panels more than four months later, and both panel-selected physicians opined the employee should have been restricted from working since the date of the accident. The employer paid temporary disability benefits as of the date the employee first saw an authorized physician, but it denied any temporary disability benefits before that date due to the employee's delay in returning the signed panels, which it deemed noncompliance. After an expedited hearing, the trial court awarded the requested disability benefits and also awarded attorneys' fees, determining the employer had acted unreasonably in delaying the authorization of medical treatment and the payment of temporary disability benefits. The employer has appealed. Having carefully reviewed the record and arguments of counsel, we affirm the award of temporary total disability benefits, reverse the award of attorneys' fees, and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Jeffrey G. Foster, Hendersonville, Tennessee, for the employer-appellant, Benchmark Contractors, LLC

Lauren B. Ray, Nashville, Tennessee, for the employee-appellee, JD Russell

**Factual and Procedural Background**

On February 1, 2024, JD Russell ("Employee") was 78 years old and working for Benchmark Contractors, LLC ("Employer") installing sewer and water lines. While assisting his coworker, who was working in a manhole, with his airhose, a steel tripod weighing approximately 150 pounds fell on Employee, causing a laceration to his head. Employee was taken by ambulance to Skyline Medical Center, where he complained of pain in his head, the right side of his neck, and his right shoulder. A CT scan of his head and neck and x-rays of his right shoulder were normal, and he was diagnosed with a concussion and received staples for his head laceration. Employee was told to stay off work until the following Monday and to follow up with his primary care physician.

A field foreman met Employee at the hospital and remained with him while he was there. Despite the foreman's presence at the hospital and Employer's knowledge of the work accident and Employee's injury, Employee was not offered a panel of physicians or provided any information about workers' compensation injuries. Even after his discharge from the emergency room, Employer did not offer a panel of physicians or instruct Employee as to how to seek follow-up care as directed by the emergency room physician. As a result, Employee followed up with his primary care physician, Dr. Anil Nachnani, on February 6, 2024. Dr. Nachnani prescribed medication for post-concussive syndrome and noted Employee complained of "acute shoulder pain, unspecified laterality" as well as dizziness. He instructed Employee to return the following week for removal of his staples. On February 12, 2024, Dr. Nachnani removed the staples and stated Employee "cannot go to work till [sic] he[']s better [expect] 8-12 weeks." During this time, Employee received no communication from Employer regarding his claim, although Employee's wife was communicating with an administrative assistant named Jennifer who worked for Employer.

On February 17, 2024, Employee was seated at a table at his brother's house when his right side "went numb." He was transported by helicopter to Erlanger Hospital ("Erlanger") in Chattanooga, where he was diagnosed with "stroke-like symptoms," which he believed to be related to the February 1 work injury.[1] Soon thereafter, both parties retained counsel. On February 21, Employer's counsel emailed a HIPAA compliant release to Employee's counsel for Employee's signature and stated, "[o]bviously, my client cannot provide any workers' compensation benefits until they are able to obtain information on this claim." On March 4, 2024, counsel for Employer provided a panel of orthopedic surgeons and a panel of neurosurgeons to counsel for Employee, stating, "We are still in the dark regarding a work-related injury diagnosis and treatment needed. Hopefully that will become clear when the medical records are received. In the meantime,

---

[1] Because there are no medical records from Erlanger Hospital contained in the record, we glean this information from Employee's unrefuted testimony at the expedited hearing.

attached[,] please find a panel of neurosurgeons and a panel of orthopedics for [Employee's] consideration." On March 11, the nurse case manager assigned to the claim by the insurance carrier sent an email to both attorneys, confirming her appointment with Employee, and Employee's counsel responded, inquiring whether temporary total disability ("TTD") benefits had been initiated. Employer's counsel responded that they "[did not] have the HIPAA Release back to get the records from Erlanger. . . . At this point, we have no confirmation that [Employee] is out of work due to a work[-]related injury. We offered two panels last week and need to have the Erlanger records prior to any appointment." In a subsequent email, counsel for Employer stated, "We are certainly not wanting to delay any treatment or TTD due. We just need to confirm that there is medical evidence linking the stroke to the work injury since there were no abnormalities on any diagnostic testing . . . and the stroke occurred a couple of weeks later." On March 12, 2024, Employee's counsel sent a digital image of the HIPAA release, which Employee had signed on March 7, 2024.

There is no further communication between the parties reflected in the record until April 16, 2024, when counsel for Employee sent the signed medical release again via email. Employer's counsel responded later that day stating, "I'm sorry. I misunderstood the adjuster. They are needing the signed panels to schedule appointments. Not the Release[.]" Employee filed a petition for benefit determination ("PBD") on May 24, 2024. A dispute certification notice was issued July 19, 2024, identifying medical benefits as a disputed issue.[2] Employee selected Dr. James Rubright from the orthopedic panel on July 22, 2024, and filed a request for expedited hearing on August 1, 2025.

Employee first saw Dr. Rubright on August 8, 2024.[3] Employee's counsel sent a questionnaire to Dr. Rubright on February 5, 2025 asking whether the right shoulder injury arose primarily out of the February 1, 2024 work accident, what dates Employee was unable to work as a result of the work injury, and what dates Employee was able to work with restrictions.[4] Dr. Rubright responded on February 26, 2025, opining that Employee's right shoulder injury was primarily caused by the accident, considering all causes. He stated Employee could not work from February 1, 2025 to August 8, 2025, and assigned ongoing restrictions beginning August 8, 2025 of no use of his right upper extremity. He went on to state, "[h]owever, [Employee] has had a head injury that may have kept him off . . . work. Defer to neuro."

---

[2] An email from Employer's counsel is attached to the dispute certification notice preserving "any and all defenses which may come to light."

[3] The record does not contain any documentation from this appointment, other than the letter confirming the date and time.

[4] The record contains numerous status orders during this time indicating Employee had begun receiving authorized medical treatment and TTD benefits.

3

Meanwhile, another panel of neurosurgeons was provided to Employee on January 9, 2025. Employee selected Dr. Clint Morgan, who responded to a questionnaire from Employee's counsel regarding Employee's diagnosis and restrictions.[5] Dr. Morgan responded that Employee's neurological complaints were primarily caused by the work accident of February 1, 2024, that Employee could not work as of the date of the injury, and that he was still unable to work due to significant weakness in his right upper extremity. Dr. Morgan went on to state, "[i]n order to accommodate [Employee's] neurological injury, it would be advisable for him to have periods of cognitive and physical rest if he does return to work, to minimize the chances of exacerbation of his post-concussive syndrome." He further recommended "ongoing cognitive evaluation and cognitive therapy related to post-concussion syndrome, which seems to fit the constellation of symptoms that he describes [beginning] on [February 1, 2024.]"

Although Employer began paying TTD as of August 8, 2024, it declined to pay any TTD from February 1, 2024 to August 7, 2024, prompting Employee to seek relief from the court. The court conducted an expedited hearing on September 30, 2025, at which Employee was the only witness to testify in person. Employee testified that he had been a part of the workforce since he was a teenager and had worked for Employer for over eight years when he was injured. This was his first workers' compensation claim. According to Employee, he and his wife provided information regarding his restrictions from Dr. Nachnani to Employer, but he did not receive a panel of physicians or any communication from Employer regarding his work injury.

In support of its position, Employer submitted a Rule 72 Declaration of Employer's claim representative in which she stated that Employer notified the insurance carrier on February 2, 2024, that Employee suffered a laceration to his head requiring emergency medical treatment and that he was restricted from working for a few days. She further noted that she called Employee on February 5 with no response and then again on February 14, after Employer notified her that Employee was seeking medical treatment for a head and shoulder injury. Employee testified that he was unaware of having received any such calls or voicemails and that he did not know how to pursue his workers' compensation claim or seek follow-up medical care.

Although the parties agreed that Employee was restricted from working from the date of the accident, February 1, 2024, to August 7, 2024, Employer argued that Employee's failure to return a signed panel from March 4 until July 22 was noncompliance under the statute. Employer contended that Employee's delay in signing the panel was tantamount to a refusal to "accept the medical . . . services [Employer was] required to furnish" and, pursuant to Tennessee Code Annotated section 50-6-204(d)(7), Employee

---

[5] There is no information in the record as to when Employee saw Dr. Morgan. The questionnaire is dated February 5, 2025, and Dr. Morgan's response is dated May 30, 2025.

was not entitled to temporary disability benefits during that time period due to his noncompliance.

The court issued an order on October 23, 2025, awarding Employee TTD benefits from February 1, 2024 to August 7, 2024, as well as attorneys' fees to Employee's counsel pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B). The court reasoned that Employer did not comply with applicable statutory and regulatory provisions by failing to offer a panel of physicians within three business days after Employee suffered his injury as required by Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) and Tenn. Comp. R. and Regs. 0800-02-01-.06(1). The court also observed that, by her own admission, the adjuster knew Employee had suffered an injury and was seeking medical treatment by February 14 at the latest, yet she did not offer a panel until March 4. Furthermore, the court found that the offer of a panel was an "empty gesture," as Employer's counsel stated an appointment would not be scheduled until it had received pertinent medical records.[6] In regard to Employee's claim for attorneys' fees, the court awarded $12,075.00 based on an affidavit submitted by Employee's attorney, reasoning that Employer "unreasonably fail[ed] to timely initiate [medical and temporary disability benefits]" pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B). Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

---

[6] In its analysis, the court did not address the impact of the April 16, 2024, email from Employer's counsel requesting the signed panels to schedule authorized medical treatment.

**Analysis**

Employer raises two issues on appeal, which we restate as follows: (1) whether the trial court erred in finding Employee was entitled to TTD when he failed to timely make a selection from the panels provided; and (2) whether the trial court erred in granting attorneys' fees for an alleged unreasonable delay in the provision of benefits. Employee contends that Employer acted unreasonably in denying medical care until it received his medical records, and, thus, the delay in treatment was not due to his willful failure to accept medical treatment.

*Temporary Total Disability Benefits*

The trial court ordered Employer to pay TTD benefits from the date of injury until August 7, 2024, relying on the medical opinions of both Dr. Rubright and Dr. Morgan. Employer argues that Employee's failure to return the signed panels constituted noncompliance with medical treatment under Tennessee Code Annotated section 50-6-204(d)(7), and, thus, Employee was not entitled to TTD benefits during that time period.

"An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, Docket No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). "Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Id.* As cited by Employer, "[i]f the injured employee refuses to . . . accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended . . . ." Tenn. Code Ann. § 50-6-204(d)(7) (2025).

We conclude Employer's position regarding Employee's alleged "noncompliance" is misplaced. Employer's argument ignores the fact that, after being released from the emergency room with instructions to seek follow-up care, Employee was entitled to a panel of physicians from which he could select a provider. That did not happen in a timely manner. As a result, Employee sought follow-up care with his primary care physician, Dr. Nachnani, who restricted him from working for eight to twelve weeks beginning on February 12, 2024. Thus, regardless of the status of any other medical treatment, Employee's right to TTD benefits was triggered by the work restrictions imposed by his primary care physician. Although Dr. Nachnani was Employee's primary care physician and not an authorized treating physician, Employer did not provide a panel within three days of the accident as required by Tenn. Comp. R. and Regs. 0800-02-01-.06(1) and ran the risk of being held responsible for medical care Employee was forced to seek on his own. *See Young v. Young Electric Co.*, No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016).

6

Once the obligation to pay TTD was triggered by Dr. Nachnani's restrictions, those benefits could only be terminated by Employee's return to some form of paid employment or by his being placed at maximum medical improvement. Neither circumstance is documented in this record. Furthermore, with respect to whether Employee's failure to promptly return the signed panels constituted noncompliance, there is no evidence that Employee refused to comply with any reasonable request for examination, and we decline to equate failure to return a signed panel, in this instance, with a refusal to accept any medical treatment Employer was required to furnish. *See Newell v. Metro Carpets, LLC*, No. 2015-05-0091, 2016 TN Wrk. Comp. App. Bd. LEXIS 57, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 28, 2016). Here, the preponderance of the evidence supports the trial court's award of TTD benefits to Employee from February 1, 2024, the date of the accident, until August 7, 2024, the day before Employer initiated TTD, and we affirm that portion of the order.[7]

*Attorneys' Fees*

With respect to attorneys' fees, the trial court determined that, although Employer provided two panels of specialists the month after the accident and initiated TTD after Employee's first visit to Dr. Rubright in August, its denial of additional TTD benefits and its initial refusal to authorize medical treatment was unreasonable, thus supporting an award of attorneys' fees as of the date of the expedited hearing.

"[T]he court of workers' compensation claims may award reasonable attorneys' fees and reasonable costs . . . incurred when the employer . . . [u]nreasonably denies a claim or unreasonably fails to timely initiate any of the benefits to which the employee . . . is entitled . . . ." Tenn. Code Ann. § 50-6-226(d)(1)(B) (2025).[8] "A trial court's award of attorney[s'] fees is discretionary and an appellate court's review of such a decision applies an 'abuse of discretion' standard of review." *Harris v. Nash. Ctr. for Rehab. and Healing*, No. 2019-06-1008, 2021 TN Wrk. Comp. App. Bd. LEXIS 9, at *6-7 (Tenn. Workers' Comp. App. Bd. Jan. 28, 2021) (internal citations omitted). A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

---

[7] As Employer did not initiate TTD benefits within twenty days of the date when it had knowledge of the disability based on Dr. Nachnani's restrictions, the trial court may consider on remand whether a twenty-five percent penalty is appropriate pursuant to Tennessee Code Annotated section 50-6-205(b)(3)(A).

[8] Previous versions of section 226(d)(1)(B) authorized an award of attorneys' fees when an employer "wrongfully" denied or withheld benefits. "Wrongfully" was defined to mean "erroneous, incorrect, or otherwise inconsistent with the law or facts." Tenn. Code Ann. § 50-6-226(d)(1(B) (2021). To date, we have not addressed the impact of this statutory change.

Attorneys' fees may be awarded at the interlocutory stage when "highly unusual circumstances" are present. For example, an award of fees may be appropriate at an interlocutory stage "in circumstances where an employer relies on its own interpretation of medical evidence without seeking an expert medical opinion to support its interpretation, fails to take reasonable steps to investigate a claim before denying it, fails to consider evidence in favor of the injured worker, and/or declines to reconsider its denial of a claim in the face of newly-discovered countervailing evidence." *Travis v. Carter Express, Inc.*, No. 2018-03-0237, 2019 TN Wrk. Comp. App. Bd. LEXIS 25, at *13-14 (Tenn. Workers' Comp. App. Bd. June 24, 2019) (internal citations omitted).

We conclude the circumstances presented in this case do not support an interlocutory award of attorneys' fees. Although the trial court found Employer's offer of the panel on March 4 to be an "empty gesture" due to Employer's caveat that a medical appointment would not be scheduled until it had received pertinent medical records, its order did not consider the impact of the April 16 email from Employer's counsel to Employee's counsel requesting the signed panels in order to schedule medical treatment. Obviously, the claim representative could not make an appointment with a provider that had not yet been selected. During oral argument, Employee's counsel offered no explanation as to why Employee did not indicate his selection of an authorized physician and return the signed panel after receiving it on March 4 or after being reminded the signed panel was needed on April 16. In fact, Employee did not indicate his selection of an authorized physician until July, after which an appointment with the panel-selected physician was scheduled.

Furthermore, the award for attorneys' fees includes payment for billing entries through the date of the expedited hearing, by which time medical treatment and TTD had already been initiated. We conclude an award of attorneys' fees under these circumstances constitutes an abuse of discretion by the court. Simply put, this case does not represent the type of unusual circumstances required for an award of attorneys' fees at an interlocutory stage of the case. *See Andrews v. Yates Servs., LLC*, No. 2016-05-0854, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *8-9 (Tenn. Workers' Comp. App. Bd. May 23, 2017).[9]

## Conclusion

For the foregoing reasons, we affirm the trial court's award of temporary disability benefits, reverse the award of attorneys' fees at this stage in the litigation, and remand the case. Costs on appeal are taxed to Employer.

---

[9] This conclusion does not impact the trial court's award of attorneys' fees equal to twenty percent of the temporary disability owed from February 1, 2024, until August 7, 2024, as authorized by Tennessee Code Annotated section 50-6-226(a)(1).